IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>v.<br><br>KEON MOSES. | Criminal Case No. CCB-02-0410-2 |

### MEMORANDUM

Now pending before the court are Keon Moses's motions for compassionate release and for resentencing under Section 404 of the First Step Act. Moses is currently serving a sentence of life imprisonment without the possibility of release for crimes he committed as a teenager. Given intervening developments in charging practices in this District, judicial discretion in sentencing, and the role of youth in criminal punishment, Moses's sentence is dramatically out of step with the sentence he would face were he sentenced today. Accordingly, the court will grant Moses's motion and modify his sentence to a total term of thirty-five years imprisonment.

### BACKGROUND

On October 1, 2003, Moses was charged, alongside two co-defendants, for his role in a drug trafficking organization known as the "Lexington Terrace Boys." *See* Third Superseding Indictment, ECF 181. The indictment charged Moses with one count of conspiracy to distribute fifty grams or more of crack cocaine under 21 U.S.C. §§ 841, 846 (Count One); three counts of using a firearm in furtherance of a drug-trafficking crime resulting in death under 18 U.S.C. § 924(j) (Counts Three, Four, and Six); one count of discharge of a firearm in relation to a drug trafficking crime under 18 U.S.C. § 924(c) (Count Five); and made a special finding that Moses

1

was eligible for the death penalty on Counts Three, Four, and Six. *See id.* A jury convicted Moses on Counts One, Three, Four, Five, and Six. *See* Jury Verdict, ECF 373; Judgment, ECF 432.[1]

Moses's convictions stem from his role in the Lexington Terrace Boys, a drug conspiracy known for distributing crack-cocaine in a "six-square-block neighborhood in West Baltimore" known as "Lexington Terrace." *United States v. Foster*, 507 F.3d 233, 237 (4th Cir. 2007). As a member of the Lexington Terrace Boys, Moses started selling crack-cocaine in the neighborhood's "open-air drug market" as a teenager, with his participation escalating to serious crimes of violence by the time he turned eighteen. *See id.* at 237-38. The jury convicted Moses on one count of conspiracy to distribute fifty grams or more of crack cocaine for his participation in the conspiracy, and on even more serious charges for additional violent crimes he committed as a member of the conspiracy.

The first of these crimes, the so-called "Calhoun Street murders," involved Moses, his co-defendant Michael Taylor, and a third Lexington Terrace Boys member, Marcus Baskerville. *See id.* at 238-240. Moses had for some time been relying on members of a neighboring gang as suppliers, and after Moses "had a falling out" with one of these suppliers, he, Taylor, and Baskerville hatched a plan to rob the suppliers' stash house. *Id.* at 239.

At the stash house, the Lexington Terrace Boys encountered three members of the supplying gang: Gregory Spain, Ronald Harris, and Charles Brockington. *See id.* at 238-240. The Lexington Terrace Boys, armed and masked, demanded money, drugs, and guns. *Id.* at 239. When those demands went unfulfilled, an altercation ensued. *See id.* The Lexington Terrace Boys ultimately began firing on the suppliers in rapid succession. "Moses shot Spain at least seven times," killing him. *Id.* Harris was also shot repeatedly and killed. *Id.* Taylor shot Brockington in

---

[1] Count Seven was dismissed pre-trial. *See* Mem., ECF 201.

the head and chest, but although Brockington sustained "eight gunshot wounds," he survived. *See id.* at 239-40. The jury convicted Moses on two counts of using a firearm in furtherance of a drug-trafficking crime resulting in death and one count of discharging a firearm in relation to a drug trafficking crime for the Calhoun Street murders.

Moses added to these crimes when he solicited the murder of Robert "Snoop" McManus to prevent McManus from testifying against him in his state trial for the Calhoun Street murders. As a result of those murders, Moses had been arrested on state charges. McManus was a critical witness for the prosecution. *See id.* at 240. So Moses wrote to Taylor, instructing him to kill McManus. "His statements can hurt me," Moses wrote, "I don't gotta say it, you know what I mean?" *Id.* (quoting J.A. 726). Taylor received the letter and, on February 22, 2002, executed McManus. *See id.* The jury convicted Moses on one count of causing death through use of a firearm in furtherance of a drug-trafficking crime for directing Taylor to kill McManus.

All told, Moses was convicted on four charges—one count of conspiracy and three counts of drug-related killings—and the Government sought the death penalty as punishment for his crimes. After the jury convicted Moses, however, it elected to impose a sentence of life imprisonment without the possibility of release for his death-eligible offenses. *See* Verdict, April 28, 2004; Sentencing Tr. 31:14-25.[2] The court sentenced Moses on the remaining counts. All together, Moses received concurrent sentences of life without the possibility of release for drug trafficking (Count One), for the murder of Ronald Harris (Count Three), for the murder of Gregory Spain (Count Four), and for the murder of Robert McManus (Count Six), and ten years consecutive to the preceding counts for the shooting of Charles Brockington (Count Five). *See* Judgment; Tr. 32:1-24. He was also sentenced to five years of supervised release. *See* Judgment; Tr. 32:1-24.

---

[2] The sentencing transcript is available at ECF 736-1. It is in hereinafter referred to as "Tr."

Although the court was bound to impose the jury's selected sentence on the death-eligible offenses, it also made clear that it "fully agree[d] with that verdict" because of "the severity of the crimes" Moses had committed. *See* Tr. 31:18-25.

The court entered Moses's sentence on July 23, 2004, and Moses began seeking post-conviction relief around five years later. On March 12, 2009, Moses filed pro se his first motion to vacate his sentence. Mot. to Vacate, ECF 549. The court denied the motion. Order, ECF 582. On December 1, 2014, Moses filed his second pro se motion to vacate. Second Mot. to Vacate, ECF 637. The court denied that motion as well. Order, ECF 650. On September 30, 2020, Moses filed a pro se motion to reduce his sentence under Section 404 of the First Step Act. Mot. for First Step Act Resentencing, ECF 692. A year and a half later, now represented by counsel, Moses filed a motion for compassionate release. Mot. for Compassionate Release, ECF 744. The Government has filed responses opposing Moses's First Step Act and compassionate release motions, *see* ECFs 722, 749, and Moses filed a reply in support of his motion for compassionate release, *see* ECF 756. The court now proceeds to the merits of Moses's motions, which are ripe for review.

## ANALYSIS

Moses seeks compassionate release under 18 U.S.C. § 3582(c)(1)(A) or, in the alternative, resentencing under Section 404 of the First Step Act. Under the compassionate release statute, a court may reduce a movant's sentence for "extraordinary and compelling reasons" if the reduction is consistent with the factors set forth in 18 U.S.C. § 3553(a). *See* 18 U.S.C. § 3582(c)(1)(A). Fourth Circuit law permits a district court to "consider *any* extraordinary and compelling reason for release that a defendant might raise." *See United States v. McCoy*, 981 F.3d 271, 284-86 (4th Cir. 2020) (quoting *United States v. Zullo*, 976 F.3d 228, 230 (2d. Cir. 2020)). Accordingly, the court may grant a properly presented motion for compassionate release if "extraordinary and

4

compelling" circumstances warrant a sentence reduction and such a reduction is consistent with the § 3553(a) factors.

## I. Administrative Exhaustion

At the outset, the court must determine whether Moses's motion for compassionate release is properly before it. Under the compassionate release statute, a petitioner may seek relief in federal court only after "fully exhaust[ing] all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on [their] behalf or the lapse of 30 days from the receipt of such a request by the warden of [their] facility, whichever is earlier." *See* 18 U.S.C. § 3582(c)(1)(A).

The Government argues that Moses has not satisfied this administrative exhaustion requirement for two reasons. First, it contends that the court cannot consider the arguments in this motion because Moses's petition to the Bureau of Prisons sought compassionate release only on the basis of risk of COVID-19 exposure, yet Moses's motion for compassionate release here is predicated on an unwarranted sentencing disparity. *See* Opp'n to Mot. for Compassionate Release Ex. 1, ECF 749-1. The Fourth Circuit has held, however, "that § 3582(c)(1)(A) does not require issue exhaustion." *See United States v. Ferguson*, 55 F.4th 262, 269 (4th Cir. 2022). Accordingly, Moses may appropriately advance arguments in this motion not raised in his original administrative petition. Second, the Government argues that Moses's motion is "untimely" because he "submitted his request for compassionate release in December 2020 and filed the instant Motion fourteen months after receiving his administrative response." *See* Opp'n to Mot. for Compassionate Release at 7. The Government cites no authority identifying a statutory deadline for filing a compassionate release motion once administrative remedies have been

exhausted, however, and the court is aware of none. As a result, Moses has satisfied the administrative exhaustion requirements and the court may consider the merits of his motion.

**II. Extraordinary and Compelling Reasons Warranting Relief**

A petitioner's sentence presents an extraordinary and compelling basis for relief if they would "likely receive a dramatically lower sentence than the one [they are] currently serving" were they sentenced today. *United States v. Elzey*, No. 09-cr-0288, 2022 WL 316717, at *2 (D. Md. Feb. 2, 2022) (quoting *United States v. Decator*, 452 F. Supp. 3d 320, 324 (D. Md. 2020), *aff'd sub nom. McCoy*, 981 F.3d 271)[3]; *see McCoy*, 981 F.3d at 286. As the court explains below, three factors convince it that were Moses sentenced today, he would likely receive a sentence in the thirty-year range. This represents a "gross disparity" from the sentence the court imposed and creates an extraordinary and compelling circumstance that warrants relief. *See McCoy*, 981 F.3d at 285 (quoting *United States v. Redd*, 444 F. Supp. 3d 717, 723 (E.D. Va. 2020)).

First, were Moses sentenced today the Government almost certainly would not seek capital punishment. When Moses was charged in 2004, however, the Government sought the death penalty for his violations of 18 U.S.C. § 924(j), using a firearm in furtherance of a drug-trafficking crime resulting in death. *See* Third Superseding Indictment. A conviction under § 924(j) is punishable "by death or by imprisonment for any term of years or for life," *Foster*, 507 F.3d at 245, and a sentencing court is "bound" to enter the sentence selected by the capital sentencing jury, *see* Tr. 31:18. After capital sentencing proceedings in this case, the jury opted to sentence Moses to life imprisonment without the possibility of release and the court imposed the sentence.

---

[3] Unpublished opinions are cited for the persuasiveness of their reasoning only, not for precedential value.

6

Since Moses's sentencing, however, the Government has effectively abandoned capital punishment in this District. Indeed, the Government does not appear to have filed a notice of intent to pursue the death penalty in the District of Maryland since April 2008. *See United States v. Taylor*, CCB-02-0410, 2023 WL 4407593, at *3 (D. Md. July 7, 2023). With capital punishment now so "disfavored" in this District, it is "highly unlikely" the Government would pursue it were it prosecuting Moses today. *See Sappleton*, 2021 WL 598232, at *3 (addressing § 851 enhancements). As a result, Moses's sentence would be committed to the court—not the jury.

Second, the court would today no longer be bound to impose a Guideline sentence. At Moses's sentencing in 2004, the U.S. Sentencing Guidelines bound this court to impose a sentence within its enumerated ranges. But in 2005, the U.S. Supreme Court held in *United States v. Booker*, 543 U.S. 220 (2005) that the Guidelines provide advisory—not mandatory—sentencing ranges for a court to consider as one factor in imposing a criminal sentence. So were the court sentencing Moses today, it would have discretion to impose an appropriate sentence under the factors enumerated in § 3553(a) notwithstanding the Guidelines range.

Third, in the years since Moses was sentenced, the U.S. Supreme Court has placed increased importance on the role of youth in sentencing.[4] As the Supreme Court has since explained, "developments in psychology and brain science" have revealed the need to place children and adults in "constitutionally different" categories "for purposes of sentencing" because of the "diminished culpability" and increased "prospects for reform" during the stages of adolescent psychological development. *See Miller v. Alabama*, 567 U.S. 460, 471 (2012) (quoting

---

[4] *See Roper v. Simmons*, 543 U.S. 551 (2005); *Graham v. Florida*, 560 U.S. 48 (2010); *Miller v. Alabama*, 567 U.S. 460 (2012); *Montgomery v. Louisiana*, 577 U.S. 190 (2016); *Jones v. Mississippi*, 141 S. Ct. 1307 (2021). Moses was sentenced on July 23, 2004, before the first of these decisions was issued.

7

*Graham v. Florida*, 560 U.S. 48, 68 (2010)). Although these constitutional decisions draw "the line at 18 years of age," the Court has also recognized that the "qualities that distinguish juveniles from adults do not disappear when an individual turns 18." *Roper v. Simmons*, 543 U.S. 551, 574 (2005). Adapting to this understanding, courts now "consistently reject life sentences for those who commit crimes, even heinous crimes, in the 'immaturity, irresponsibility, impetuousness, and recklessness' of youth." Mem. and Order at 8, *United States v. Linton*, JKB-98-0258 (D. Md. Sept. 27, 2021), ECF 471 (quoting *Miller*, 567 U.S. at 476).

As these three factors have coalesced in the years since Moses's sentencing, courts in this District have "routinely impose[d] sentences within the thirty-year range" for youthful defendants "involved in drug-related killings." *See United States v. Williams*, CCB-07-0402, 2021 WL 3725435, at *3 (D. Md. Aug. 23, 2021) (collecting cases). Sentencing data show that the median sentence for murder in this District is 300 months,[5] and experience confirms that cases like Moses's follow this trend. For example, in *United States v. Floyd*, this court sentenced to 360 months a defendant who was convicted of conspiring to commit murder in furtherance of a racketeering conspiracy. *See United States v. Barronette*, 46 F.4th 177, 189, 204 (4th Cir. 2022). Similarly, in *United States v. Hunter*, Chief Judge Bredar sentenced to 321 months a defendant who admitted to distributing a mandatory-minimum quantity of drugs and to shooting and killing a rival gang member in a retaliatory strike. *See* Judgment, *United States v. Hunter*, JKB-16-0363 (D. Md. June 15, 2018), ECF 706; Plea Agreement at 4, *United States v. Hunter*, JKB-16-0363 (D.

---

[5] *See Interactive Data Analyzer*, U.S. Sentencing Comm'n, https://ida.ussc.gov/analytics/saw.dll?Dashboard. At the circuit and national level, the average is even lower: The median sentence for murder is 284 months in the Fourth Circuit and 231 months nationwide. *See Statistical Information Packet, Fiscal Year 2021, Fourth Circuit* 11, U.S. Sentencing Comm'n (2022), available at https://www.ussc.gov/sites/default/files/pdf/research-and-publications/federal-sentencing-statistics/state-district-circuit/2021/4c21.pdf.

Md. Oct. 3, 2017), ECF 288. Likewise, in *United States v. Weaver*, Judge Bennett sentenced to 360 months a defendant who pled guilty to the execution-style murder of another drug dealer. *See* Sentencing Tr. 49:14-50:2, 52:16-20, *United States v. Weaver*, RDB-19-0144 (D. Md. Aug. 15, 2022), ECF 214.[6]

A sentence in the thirty-year range comports with this precedent even as Moses would continue to face a Guideline sentence of life imprisonment today. Indeed, the Guideline ranges for the defendants sentenced in *Floyd*, *Hunter*, and *Weaver* each contemplated life imprisonment.[7] The defendant in *Floyd* faced, like Moses, a Guideline sentence of life, and, like Moses, exercised his right to take his case to trial. *See Barronette*, 46 F.4th at 187, 211. Yet after taking all the relevant factors into account, the court imposed a thirty-year sentence notwithstanding the Guideline calculation. *See id.* at 211. And although the defendants in *Hunter* and *Weaver* entered plea agreements to avoid life sentences, Moses's only alternative to trial was accepting a deal offering a life sentence in exchange for the Government withdrawing its request for capital punishment—a Hobson's choice Moses would no longer face and not forced upon Hunter, Weaver or others prosecuted in today's evolved sentencing landscape. On top of this, Moses was convicted for crimes committed at a younger age—his late teens—than any of these similarly situated defendants. For all these reasons, the court concludes that, were Moses prosecuted today, he would

---

[6] This court has followed these examples in the context of post-conviction relief as well. For instance, in *United States v. Gray* this court granted a motion for compassionate release and resentenced to the equivalent of thirty-one years a defendant who was convicted of murder in aid of racketeering. *See United States v. Gray*, CCB-95-0364, 2021 WL 1856649, at *1, *6 (D. Md. May 10, 2021).

[7] *See Barronette*, 46 F.4th at 211; Plea Agreement at 2, *United States v. Hunter*, JKB-16-0363 (D. Md. Oct. 3, 2017), ECF 288; Sentencing Tr. 21:2-10, *United States v. Weaver*, RDB-19-0144 (D. Md. Aug. 15, 2022), ECF 214.

likely receive a sentence "within the thirty-year range." *See Williams*, 2021 WL 3725435, at *3.[8]

A sentence in the thirty-year range represents a "gross disparity" with the life sentence Moses is currently serving. *McCoy*, 981 F.3d at 285 (quoting *Redd*, 444 F. Supp. 3d at 723). As Chief Judge Bredar has explained, a "mandatory life sentence, however imposed, constitutes a significant sentencing disparity when considering how the modern criminal justice process" operates on defendants like Moses. *See* Mem. and Order at 8, *United States v. Linton*, JKB-98-0258 (D. Md. Sept. 27, 2021), ECF 471. Accordingly, the disparity between Moses's sentence and the sentence he would face today, understood in the context of his particular circumstances and intervening legal developments, creates an extraordinary and compelling circumstance that may warrant a reduced sentence. The court now turns to the § 3553(a) factors to determine whether they are compatible with that result.[9]

### III. Section 3553(a) Factors

Under the compassionate release statute, the court must consider the factors set forth in 18 U.S.C. § 3553(a) "to the extent they are applicable" before reducing a defendant's sentence for

---

[8] Moses's conduct was, undeniably, even more extreme than that of the defendants in *Floyd*, *Hunter*, and *Weaver*. The court accounts for this in considering the § 3553(a) factors and, as discussed below, leaves in place a longer sentence for Moses than either Floyd, Hunter, or Weaver received.

[9] The Government argues that even if extraordinary and compelling circumstances exist, the court nevertheless lacks authority to modify Moses's sentence in this case because under 18 U.S.C. § 3594, it was "statutorily required to impose the sentence of life imprisonment once it was recommended by the jury." Opp'n to Mot. for Compassionate Release at 8-9. That may be true in the first instance, but as the Fourth Circuit has noted, the compassionate release statute authorizes modifying a sentence "'in *any* case' in which a prisoner satisfies certain conditions." *United States v. Bethea*, 841 F. App'x 544, 555 n.13 (4th Cir. 2021) (emphasis added) (quoting 18 U.S.C. § 3582(c)(1)); *see also United States v. Halvon*, 26 F.4th 566, 570 (2d Cir. 2022) (a "mandatory minimum sentence does not preclude a district court from reducing a term of imprisonment on a motion for compassionate release"). Accordingly, the court may, as appropriate, grant compassionate release even where a jury has sentenced the petitioner to life imprisonment without the possibility of release.

10

"extraordinary and compelling reasons." 18 U.S.C. § 3582(c)(1)(A). The factors the court considers include: (1) "the nature and circumstances of the offense"; (2) "the history and characteristics of the defendant"; (3) the need for a sentence to provide just punishment, promote respect for the law, reflect the seriousness of the offense, deter crime, protect the public, and provide rehabilitative services; (4) the Guideline sentence; and (5) the need to avoid unwarranted sentencing disparities among similarly-situated defendants. *See* 18 U.S.C. § 3553(a). Ultimately, the court concludes that a sentence of thirty-five years is "sufficient, but not greater than necessary, to comply with the purposes" of incarceration. *See* 18 U.S.C. § 3553(a).

Starting with the nature of the offense, the court cannot overstate the severity of Moses's crimes or the "grief and tragedy" he caused his community. *See* Tr. 31:7-13. Moses spent years furthering a violent conspiracy to distribute illegal and dangerous drugs, and ultimately participated in killing at least three rivals to accomplish his illicit ends. These crimes "rank among the most serious offenses imaginable" and warrant a correspondingly severe sentence. *See* Mem. and Order at 10, *United States v. Linton*, JKB-98-0258 (D. Md. Sept. 27, 2021), ECF 471.

On the other hand, Moses's personal characteristics counsel restraint. Moses was conscripted into the drug trade as a teenager after an upbringing under drug-addicted parents. From his initiation as a street dealer, Moses's conduct escalated, culminating with the violent crimes he committed in his late teens. An upbringing like Moses's, and his youth both at the time he entered the conspiracy and over the course of his participation in it, mitigate his culpability and caution against imposing a life sentence for these crimes committed "in the 'immaturity, irresponsibility, impetuousness, and recklessness' of youth." Mem. and Order at 8, *United States v. Linton*, JKB-98-0258 (D. Md. Sept. 27, 2021), ECF 471 (quoting *Miller*, 457 U.S. at 476).

With time, Moses has exemplified the notion that an adolescent's character "is not as well formed as that of an adult," *Roper*, 543 U.S. at 570, and that young people retain a "greater prospect[] for reform," *Miller*, 567 U.S. at 471. At the outset of his period of incarceration—while still in his early twenties—Moses incurred a series of disciplinary infractions, but those have dissipated as he has matured over the course of his sentence. *See* Suppl. Mot. for Compassionate Release Ex. 3, ECF 744-3. In fact, Moses has not been cited for a disciplinary infraction in over seven years. *See id.* Correspondingly, as he has aged, Moses has increasingly pursued self-improvement, completing his GED, the Challenge Program, and over thirty educational courses. *See id.* Exs. 3-4, ECFs 744-3, 744-4.[10] According to his Challenge Program coordinator, throughout the program Moses "remained diligent with self-growth and personal accountability, taking ownership of [his] actions, committing to the betterment of [himself] and the treatment community, and demonstrating mastery over all areas of [his] treatment plan." *Id.* Ex. 6, ECF 744-6. Ultimately, the coordinator concluded that he "wish[ed] others would aspire to the commitment to betterment" Moses exhibited. *Id.* Similarly, Moses's chaplain at USP McCreary expressed that Moses "utilizes his many outstanding/strong character qualities and abilities for the betterment of others," has garnered the respect of other inmates, and "is truly an example of a changed man for the better." *See id.* Ex. 7, ECF 744-7.[11]

Turning to the need for a sentence to provide just punishment, promote respect for the law, reflect the seriousness of the offense, deter crime, protect the public, and provide rehabilitative

---

[10] The Challenge Program is "a unit-based, residential program developed for inmates in penitentiary settings. The Challenge Program provides treatment to inmates with substance abuse problems and/or mental illness and offers Cognitive Behavioral Therapy oriented treatment programming wrapped within the therapeutic community model." *See* Suppl. Mot. for Compassionate Release Ex. 6, ECF 744-6.

[11] The court also acknowledges Moses's acceptance of responsibility and his apology for his conduct at the trial in this case. *See* Suppl. Mot. for Compassionate Release Ex. 2, ECF 744-2.

12

services, the court is satisfied that a thirty-five-year sentence appropriately fulfills these objectives. As the court has explained, Moses committed an offense of the utmost severity, and a correspondingly exacting sentence is warranted to underscore the seriousness of his actions, promote general deterrence, and prevent him "from creating any more victims." *See* Tr. 31:17. A sentence of thirty-five years vindicates these interests and accounts for the extent of Moses's violence relative to other similarly situated defendants. There is also no doubt that thirty-five years is a severe punishment—particularly for a defendant sentenced at age twenty-one—that courts in this District have agreed conveys, and responds to, the gravity of his offense. Such a sentence also ensures Moses will be released at an age when recidivism becomes dramatically less likely, and the risk of endangering the public correspondingly less acute.[12] At the same time, it affords appropriate opportunity for rehabilitation, which Moses's record indicates he will have amply satisfied.

Finally, the court accounts for the Guideline sentence and the need to avoid unwarranted sentencing disparities among similarly situated defendants. As discussed, Moses faces a Guideline sentence of life imprisonment. Such a sentence would, however, represent a gross disparity between Moses's sentence and the thirty-year-range sentences typically imposed upon other young men convicted of drug-related killings. It would also be out of step with the sentences of Moses's co-defendants, Aaron Foster and Michael Taylor, whose terms the court is reducing to a similar range.[13]

---

[12] *See The Effects of Aging on Recidivism Among Federal Offenders*, U.S. Sentencing Comm'n (2017), available at https://www.ussc.gov/sites/default/files/pdf/research-and-publications/research-publications/2017/20171207_Recidivism-Age.pdf.

[13] The court is reducing Foster's sentence to thirty-two years and Taylor's sentence to thirty-five years.

In sum, the § 3553(a) factors favor reducing Moses's sentence to thirty-five years.[14]

## CONCLUSION

For the reasons stated above, the court concludes that the severity of Moses's sentence presents an extraordinary and compelling circumstance warranting a reduced sentence and that the § 3553(a) factors also favor such a reduction. The motion for compassionate release will therefore be granted, and the court will reduce Moses's total sentence to thirty-five years. It will achieve this by modifying Moses's sentence to twenty years on Count One and to twenty-five years on Counts Three, Four, and Six, to be served concurrently with Count One.[15] The court leaves in place the ten-year sentence on Count Five, to be served consecutively to the preceding counts. All other terms of the original sentence, including the five years of supervised release, will remain the same.[16]

A separate order follows.

    July 10, 2023                                                          /s/
Date                                                                 Catherine C. Blake
                                                                       United States District Judge

---

[14] Although the court "fully support[ed] the jury's decision" of "life in prison" at Moses's sentencing, it supported that sentence as an alternative to a sentence of death, and in the context of charging and sentencing practices at the time. *See* Tr. 31:18-25. Given the developments in charging practices, sentencing discretion, and the role of youth in criminal punishment over the intervening twenty years, the court now believes a thirty-five-year sentence is a "just" punishment. *See* Tr. 31:24.

[15] The court reduces the sentence on Count One to twenty years for the reasons explained in its related opinion on Aaron Foster's motion for resentencing under Section 404 of the First Step Act.

[16] As a result of this conclusion, the court will deny as moot Moses's motion for resentencing under the First Step Act, ECF 692.